1

2

3

4

5           UNITED STATES DISTRICT COURT

6           EASTERN DISTRICT OF WASHINGTON

7   JAMES EDWARD JONES,

8                          Plaintiff,          NO:  12-CV-3005-TOR

9        v.                                    ORDER DENYING DEFENDANTS'
                                               SPECIAL MOTION TO STRIKE AND
                                               DENYING PLAINTIFF'S MOTION
10  CITY OF YAKIMA POLICE                       FOR ATTORNEY'S FEES
    DEPARTMENT, et al.,

11

12                         Defendants.

13        BEFORE THE COURT is Defendants' Special Motion to Strike Pursuant to

14  RCW 4.24.525 (ECF. No. 14) and Plaintiff's Motion for Attorney Fees, Costs and

15  Penalty (ECF No. 33).  This matter was heard without oral argument.  The Court

16  has reviewed the motions, the responses, and the replies, and is fully informed.

17  For the reasons discussed below, both motions are denied.

18                          BACKGROUND

19        This is a lawsuit filed by Plaintiff James Jones against the City of Yakima

20  Police Department and three of its officers stemming from an investigation and

ORDER DENYING DEFENDANTS' SPECIAL MOTION TO STRIKE ~ 1

subsequent criminal prosecution of Plaintiff for first-degree rape.  Plaintiff has

asserted causes of action for deprivation of rights under color of law in violation of

42 U.S.C. § 1983, and for defamation, official misconduct, and negligence under

Washington common law.

STATEMENT OF FACTS

On September 6, 2011, the City of Yakima Police Department ("Yakima

PD") received a report that Plaintiff James Jones ("Jones") had raped a female

victim and was holding her against her will in a Chevrolet Tahoe parked at a local

convenience store.  Yakima PD Officers Cali Saldana and Craig Miller responded

to the call.  Upon locating the vehicle, these officers made contact with the driver,

Defendant James Jones, and a female passenger.  The female passenger was visibly

upset and showed outward signs of having been recently assaulted.  In response to

questioning by Officer Saldana, the female passenger stated that Jones had

sexually assaulted her and held her against her will in his basement for

approximately five hours.  Jones was subsequently arrested.

Upon returning to department headquarters, Officer Saldana prepared a

document known as a "Suspect Information Request."  This document included a

"Request for a Determination of Probable Cause and Findings," which explained

the results of Officer Saldana's preliminary investigation and recommended

charges of first-degree rape and unlawful imprisonment.  ECF No. 19 at 11.

ORDER DENYING DEFENDANTS' SPECIAL MOTION TO STRIKE ~ 2

1  Officer Saldana also recommended that Jones receive high bail or no bail due to

2  his status as a registered sex offender and his prior convictions for second-degree

3  rape and unlawful imprisonment.  ECF No. 19 at 10.  Although this document was

4  clearly intended to be filed in Yakima County Superior Court, it is unclear from the

5  record whether it was in fact filed.

6       On September 7, 2011, Yakima PD Detective Chad Janis was assigned to

7  further investigate the charges against Jones.  On September 8, 2011, Detective

8  Janis applied for a warrant to search Jones's residence and to obtain a DNA sample

9  from Jones the following day.  Detective Janis's application included a nine-page

10  affidavit in support of probable cause which summarized the results of his

11  investigation to date.  ECF No. 23 at 6-14.  The search warrant application was

12  granted by a Yakima County Superior Court judge later the same day.  ECF No. 23

13  at 16-17.  Officers executed the warrant on September 9, 2011.  ECF No. 23 at 19.

14  Jones was ultimately charged with first-degree rape.

15       On December 26, 2011, Jones filed a complaint in Yakima County Superior

16  Court against Defendants City of Yakima Police Department, Chief of Police Greg

17  Copeland, Officer Cali Saldana, and Detective Chad Janis.  Jones's complaint

18  asserted causes of action under 42 U.S.C. § 1983 and for "Libel and Slander," and

19  "Official Misconduct and Negligence" under state law.  ECF No. 1 at ¶¶ 15-53.

20  The basis for Jones's state law claims is that Officer Saldana and Detective Janis

ORDER DENYING DEFENDANTS' SPECIAL MOTION TO STRIKE ~ 3

were negligent in performing their investigation and that Officer Saldana's

"Suspect Information Request" and Detective Janis's search warrant application

contain defamatory statements.

ANALYSIS

## I.    Special Motion to Strike Under RCW 4.24.525

Defendants have filed a special motion to strike pursuant to RCW 4.24.525.

Commonly referred to as the "anti-SLAPP[1] statute," RCW 4.24.525 is designed to

address "lawsuits brought primarily to chill the valid exercise of the constitutional

rights of freedom of speech and petition for the redress of grievances."  Substitute

Senate Bill 6395, Laws of 2010, Chapter 118, § 1.  Recognizing that such lawsuits

"can deter individuals and entities from fully exercising their constitutional rights

to petition the government and to speak out on public issues," the Washington

Legislature enacted the anti-SLAPP statute to provide litigants with an "efficient,

uniform and comprehensive method for speedy adjudication."  *Id.*  To that end, the

statute allows a party to file a special motion to strike "any claim that is based on

an action involving public participation and petition."  RCW 4.24.525(4)(a).

---

[1] The acronym "SLAPP" stands for Strategic Lawsuits Against Public

Participation.

ORDER DENYING DEFENDANTS' SPECIAL MOTION TO STRIKE ~ 4

A party moving to strike a claim under the anti-SLAPP statute must first demonstrate by a preponderance of the evidence that the claim is "based on action involving public participation and petition."  RCW 4.24.525(4)(b).  By statute, an "action involving public participation and petition," includes, *inter alia*:

- Any oral statement made, or written statement or other document submitted, in a legislative, executive, or judicial proceeding or other governmental proceeding authorized by law;

- Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial proceeding or other governmental proceeding authorized by law.

RCW 4.24.525(2)(a), (b).  If the moving party satisfies this initial burden, "the burden shifts to the responding party to establish by clear and convincing evidence a probability of prevailing on the claim."  RCW 4.24.525(4)(b).  If the responding party demonstrates a probability of prevailing by clear and convincing evidence, the court must deny the motion.  RCW 4.24.525(4)(b).  If the responding party fails to do so, however, the court must grant the motion and award the moving party a sum of $10,000 plus attorney's fees and costs.  RCW 4.24.525(6)(a)(i), (ii).

Here, Defendants have failed to satisfy their initial burden of establishing that Plaintiff's state law claims for defamation, negligence and official misconduct are "based on an action involving public participation and petition."  RCW 4.24.525(2).  Contrary to Defendants' assertions, there is little authority for the proposition that police officers are "exercising their constitutional rights to petition

ORDER DENYING DEFENDANTS' SPECIAL MOTION TO STRIKE ~ 5

1   the government and to speak out on public issues" when they investigate crimes

2   and prepare official reports.  Substitute Senate Bill 6395, Laws of 2010, Chapter

3   118, § 1.  While such activities could be nominally construed as statements or

4   writings "submitted[] in . . . a legislative, executive, or judicial proceeding or other

5   governmental proceeding authorized by law," (*see* RCW 4.24.525(2)(a)), the court

6   finds that they are not the type of free-speech activities that the anti-SLAPP statute

7   was designed to protect.

8         The cases cited by Defendants for the proposition that statements made by

9   and among law enforcement personnel in the course of their official duties are

10  protected under anti-SLAPP statutes are distinguishable on several grounds.  First,

11  these cases either involve specialized circumstances in which law enforcement

12  officers acted pursuant to some personal interest in the matter under consideration

13  (*see Schaffer v. City and Cnty. of San Francisco*, 168 Cal.App.4th 992, 996, 85

14  Cal.Rptr.3d 880, 883 (2008) (police sergeant who submitted a sworn affidavit in

15  support of criminal charge was connected to victim family through close mutual

16  friends)), or do not involve police officers investigating crimes and preparing

17  official reports at all (*see Salma v. Capon*, 161 Cal.App.4th 1275, 1286, 74

18  Cal.Rptr.3d 873, 882 (2008) (private citizen communicating with district attorney

19  and police department to request a formal investigation); *Bradbury v. Superior*

20  *Court*, 49 Cal.App.4th 1108, 1116, 57 Cal.Rptr.2d 207, 212 (1996) (district

1   attorney communicating with the general public on a "matter of public interest"

2   involving a sheriff's deputy)).

3           More importantly, however, each of the cases cited by Defendants are

4   decisions of California appellate courts applying California's anti-SLAPP law.

5   Although the Washington statute was "patterned after California's Anti-SLAPP

6   Act," the two statutes are not identical.  *See Aronson v. Dog Eat Dog Films, Inc.*,

7   738 F. Supp.2d 1104, 1109 (W.D. Wash. 2010).  Thus, when resorting to

8   California decisions as persuasive authority, courts applying Washington's anti-

9   SLAPP statute must "pay special attention to provisions of the California statute

10  that the Washington State Legislature expressly, adopted, modified, or ignored."

11  Tom Wyrwich, *A Cure for a "Public Concern": Washington's New Anti-SLAPP*

12  *Law*, 86 Wash. L. Rev. 663, 665 (2011).

13          One of the most crucial distinctions between the two statutes is that

14  Washington's Anti-SLAPP law requires a responding party to demonstrate a

15  likelihood of prevailing on his or her claims by *clear and convincing evidence*.

16  RCW 4.24.525(4)(b).  The significance of this heightened evidentiary burden

17  cannot be overstated.  Whereas the California statute—which incorporates a mere

18  "probability" standard—essentially creates an early opportunity for summary

19  judgment, the Washington statute radically alters a plaintiff's burden of proof.

20  Accordingly, courts evaluating a special motion to strike pursuant to RCW

ORDER DENYING DEFENDANTS' SPECIAL MOTION TO STRIKE ~ 7

4.24.525 must carefully consider whether the moving party's conduct falls within the "heartland" of First Amendment activities that the Washington Legislature envisioned when it enacted the anti-SLAPP statute.

Here, there is nothing to suggest that the Washington Legislature intended for police officers performing routine police activities to be protected under the anti-SLAPP statute. To the contrary, there is strong evidence that the Legislature intended for routine law enforcement activities *not* to be protected: "[The anti-SLAPP statute] does not apply to any action brought by the attorney general, prosecuting attorney, or city attorney, acting as a public prosecutor, *to enforce laws aimed at public protection*." RCW 4.24.525(3) (emphasis added). While police officers are admittedly not "prosecuting attorney[s]," they are certainly "enforc[ing] laws aimed at public protection" when they investigate crimes and prepare official reports. Moreover, a police officer is essentially "acting as a public prosecutor" when he or she files an affidavit of probable cause in the early stages of a formal criminal proceeding. At a minimum, such an officer is acting as an *agent* of a "prosecuting attorney." Accordingly, the court concludes that law enforcement officers performing routine criminal investigative activities are not engaged in "action involving public participation and petition" within the meaning of Washington's anti-SLAPP statute. Defendants' motion is thus denied.

ORDER DENYING DEFENDANTS' SPECIAL MOTION TO STRIKE ~ 8

## II.    Plaintiff's Motion for Attorney's Fees, Costs, and Penalty

Plaintiff has moved for attorney's fees, costs and a $10,000 statutory penalty on the ground that Defendants' special motion to strike "is frivolous or is solely intended to cause unnecessary delay."  *See* RCW 4.24.525(6)(b).  The court finds that Defendants' motion was neither frivolous nor solely intended to cause unnecessary delay.  Accordingly, Plaintiff's motion is denied.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendants' Special Motion to Strike (ECF. No. 14) is **DENIED**.

2.  Plaintiff's Motion for Attorney Fees, Costs and Penalty (ECF No. 33) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel and Plaintiff.

**DATED** this 24th day of May, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER DENYING DEFENDANTS' SPECIAL MOTION TO STRIKE ~ 9